AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
| v. | ) |
| Carlos Steven Escorza | ) Case No. 3:24-mj-70686 MAG |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

FILED
May 03 2024
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **February 7, 2024,** in the county of **Alameda** in the **Northern** District of **California**, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a)(1) and (b)(1)(C) | Distribution of methamphetamine |

This criminal complaint is based on these facts:

See the attached affidavit of HSI Special Agent Carlo Romero.

☑ Continued on the attached sheet.

/s/ Carlo Romero
*Complainant's signature*

Approved as to form /s/ Kevin Yeh
AUSA  Kevin Yeh

Carlo Romero, Special Agent, HSI
*Printed name and title*

Sworn to before me by telephone.

Date: 05/03/2024

*[signature]*
*Judge's signature*

City and state: San Francisco, CA

Hon. Sallie Kim, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Carlo Romero, a Special Agent with Homeland Security Investigations, Immigration and Customs Enforcement, U.S. Department of Homeland Security, being sworn, hereby state as follows:

### INTRODUCTION

1.      I make this affidavit in support of an application for an arrest warrant for and criminal complaint charging Carlos Steven Escorza ("ESCORZA") with distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), occurring on or about February 7, 2024, in Oakland, California, in the Northern District of California.

### SOURCES OF INFORMATION

2.      The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses.  Where statements made by other individuals are referenced in this affidavit, such statements are described in sum and substance and in relevant part.  Similarly, where information contained in reports and other documents or records is referenced in this affidavit, such information is also described in sum and substance and in relevant part.

3.      Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case.  Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant.  My understanding of the facts and circumstances of the case may evolve as the investigation continues.

### AFFIANT BACKGROUND

4.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses

1

enumerated in Title 18, United States Code, Section 2516.  I have also been cross-designated by the Drug Enforcement Administration and am empowered to investigate and make arrests for offenses under Title 21 of the United States Code.

5.     I am currently employed by HSI as a Special Agent ("SA").  I have been so employed since August 2016, and I am presently assigned to the Narcotics Group in San Francisco, California.

6.     I received 25 weeks of law enforcement training at the Federal Law Enforcement Training Center in Glynco, Georgia.  The training curriculum covered all aspects of investigations, including drug investigations, identification of controlled substances, physical and electronic surveillance, utilization of confidential sources, interview techniques, undercover operations, financial investigation, money laundering techniques, and the general operation of drug trafficking organizations.  This training included instruction in the investigation of federal drug crimes, including, but not limited to, violations of Title 21 of the United States Code, Sections 841 and 846.  Additionally, this training included comprehensive, formalized instruction in, but not limited to, controlled substances investigations; drug identification, detection, and interdiction; financial investigations and money laundering; identification and seizure of drug related assets; undercover operations; and electronic and physical surveillance procedures.

7.     As an HSI Special Agent, I have participated in several controlled substance investigations as the primary case agent and in a supporting role.  I have participated in debriefs of confidential sources and witnesses who had personal knowledge regarding drug trafficking organizations.  In addition, I have discussed with numerous law enforcement officers and confidential sources the methods and practices used by drug traffickers.  I have also participated in many aspects of drug investigations, including, but not limited to, undercover operations, telephone toll analysis, financial analysis, records research, and physical surveillance. Moreover, I have assisted in the execution of federal and state search and arrest warrants related to illegal activities involving controlled substances that resulted in the arrest of suspects and seizure of

controlled substances.

8. As a result of my participation in these and other activities, I have gained knowledge about the use and utility of undercover agents, confidential informants, physical surveillance, wire surveillance, electronic surveillance, oral surveillance, consensual recordings, investigative interviews, mail covers, trash searches, installation and monitoring of GPS tracking devices, pole-mounted cameras, and the execution of federal and state search and arrest warrants. In addition to using the aforementioned investigative techniques, during these investigations, I also have analyzed information from traditional record sources, such as telephone toll and subscriber records, as well as non-traditional record sources, such as the informal ledgers routinely maintained by drug traffickers listing amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources. I have also gained expertise in the identification and collection of drug and non-drug evidence, and the analysis and interpretation of recorded conversations. Additionally, I have spoken extensively with other experienced law enforcement officers and cooperating individuals about the packaging and preparation of drugs, methods of operation, and security measures employed by drug traffickers.

9. I have been the affiant of multiple federal wire and electronic interception applications in furtherance of investigations that involve drug trafficking and/or money laundering. I have monitored and listened to intercepts; reviewed transcripts and line sheets; conducted electronic and physical surveillance; or otherwise participated in investigations that utilized wire and electronic intercepts. Through my involvement in drug investigations, discussions with other law enforcement personnel, classroom and field training, discussions with confidential informants, and arrest interviews of defendants involved in the trafficking of controlled substances, I have become familiar with the methods used by drug traffickers to import, transport, safeguard, and distribute drugs, and the methods used by drug traffickers to collect, transport, safeguard, remit, and/or launder drug proceeds. I have worked with other experienced agents, law enforcement officers, and prosecutors on cases that use electronic

surveillance to investigate Mexican Drug Trafficking Organizations ("DTOs") that traffic narcotics internationally and/or across multiple jurisdictions within the United States.

10. I have initiated and/or participated in three Organized Crime Drug Enforcement Task Force ("OCDETF") investigations. The OCDETF program is part of the United States Attorney General's strategy to reduce the availability of drugs by disrupting major trafficking organizations through joint collaborations across agencies.

11. I have deployed to El Salvador for temporary duty, where I worked closely with various foreign law enforcement agents, officers, and analysts in furtherance of various transnational criminal investigations.

12. I have personally participated in the investigation discussed in this Affidavit as the lead case agent, and I am familiar with the facts and circumstances of the investigation. My role in this investigation, combined with my training and experience, information I have learned from other HSI agents and other law enforcement agencies, my discussions with witnesses involved in the investigation, and my review of records and reports relating to the investigation form the basis for the opinions I set forth in this Affidavit. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another HSI agent, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken, or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

## APPLICABLE LAW

13. Section 841(a)(1) of Title 21 of the U.S. Code makes it a crime for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

14. Section 846 of Title 21 of the U.S. Code makes it a crime for any person to attempt or conspire to commit any offense in Title 21, Subchapter I, which includes Sections 841(a)(1).

## FACTS SUPPORTING PROBABLE CAUSE

### Background

15. Since February 2023, the Alameda County Narcotics Task Force ("ACNTF") has been investigating an Oakland, California-based fentanyl trafficking group known as the ESCORZA DTO. As the investigation progressed, ACNTF and HSI identified Milton Varela-Arteaga (ARTEAGA), Jose Medina-Murillo (MEDINA) a/k/a Telmo Gallo-Medina, Gabrielle Escorza (G. ESCORZA), and Carlos Steven Escorza (ESCORZA) as members of the ESCORZA DTO.

16. On November 28, 2023, the Honorable Kandis A. Westmore, United States Magistrate Judge, authorized a search warrant to search the residence of ARTEAGA and G. ESCORZA. The warrant also authorized the search of MEDINA's residence.

17. On November 29, 2023, during the search of ARTEAGA and G. ESCORZA's residence, agents seized approximately 531 grams of fentanyl powder, a black Mercedes C-Class vehicle, and $13,265.00 in U.S. currency. On the same day, during the search of ARTEAGA's residence, agents seized approximately 2.74 kilograms of fentanyl powder, 717 grams of methamphetamine, 84 grams of heroin, counterfeit Oxycodone pills, counterfeit Xanax pills, and $1,119 in U.S. currency.

18. On November 30, 2023, a federal magistrate judge approved arrest warrants for and a complaint charging ARTEAGA and MEDINA with violating 21 U.S.C. § 841. On December 13, 2023, a grand jury returned an indictment charging ARTEAGA and MEDINA with multiple counts of violating 21 U.S.C. § 841.

19. After ARTEAGA and MEDINA went into federal custody, a Confidential Informant ("CI") 1 ("CI-1")[1] notified a detective with ACNTF that ESCORZA took charge of

---

[1] I am informed and believe that this CI is a reliable and trustworthy informant for ACNTF. According to ACNTF, the CI's motivation for providing information to law enforcement is for financial gain. I have no indication or information that the CI has ever provided misleading or false information to law enforcement. CI-1 has no criminal convictions.

ARTEAGA's drug trafficking customer base and that G. ESCORZA is currently running the operations of the ESCORZA DTO from Honduras.

20. CI-1 provided law enforcement with ESCORZA's WhatsApp account linked to telephone number XXX-XXX-0672[2] ("TN#0672") and stated that someone interested in purchasing narcotics could contact ESCORZA through TN#0672 on WhatsApp to purchase narcotics by stating that they have purchased narcotics from "Victor" (a nickname used by ARTEAGA).

21. Beginning on January 18, 2024, another Confidential Informant ("CI-2")[3] began communicating with ESCORZA via the WhatsApp account linked to TN#0672.

**February 7, 2024, Controlled Purchase**

22. Between February 2 and 5, 2024, at the direction of law enforcement, CI-2 contacted ESCORZA via WhatsApp TN#0672 to initiate a methamphetamine purchase. The communication thread is detailed below:

February 2, 2024

CI-2: Canelo was up my boy I'm trying to get a half p of christalina[4] on Wednesday cuanto[5] let me know my boy

ESCORZA: I got you

CI-2: How much my boy

//
//

---

[2] The complete phone number is obscured to protect personally identifiable information.
[3] CI-2 has criminal history that includes California state felony convictions for being in possession of a firearm, participating in a criminal street gang, and assault with a deadly weapon (not a firearm). CI-2 also has a California state misdemeanor conviction for possession of a controlled substance and criminal convictions as a juvenile. I believe that CI-2 is reliable and trustworthy. CI-2's motivation to assist law enforcement is for immigration and monetary benefits.
[4] A "half p of christalina" is code for a half pound of crystal methamphetamine.
[5] "Cuanto" is a Spanish term for "how much."

February 5, 2024

CI-2: Cuanto va ser my boy so I can get it together

ESCORZA: 600

23. Based upon my training and experience, I believe that when CI-2 told ESCORZA that he/she needed a "half p of christalina," that CI-2 was telling ESCORZA that he/she was interested in purchasing a half-pound of methamphetamine. Further, when CI-2 asked ESCORZA "cuanto" that CI-2 was asking ESCORZA how much he would charge. Lastly, when ESCORZA responded by sending CI-2 the message "600," ESCORZA was telling CI-2 that he would charge CI-2 $600.00 for a half pound of methamphetamine.

24. ESCORZA and CI-2 agreed to meet on February 7, 2024, at XXXX 87th Avenue, Oakland, CA 94621 ("87th Avenue Address")[6] to complete the transaction.

25. Before the meeting between CI-2 and ESCORZA, Det. Pena-Vega and I met with CI-2 so that CI-2 could be outfitted with an audio- and video-recording device, as well as a live monitoring device. CI-2 and his/her vehicle were also searched for contraband and none was found. CI-2 was then handed $600 in U.S. currency for purchasing a half-pound of methamphetamine from ESCORZA.

26. At approximately 12:18 p.m. on February 7th, CI-2 arrived near the 87th Avenue Address and contacted ESCORZA. ESCORZA told CI-2 that he would be arriving at the 87th Avenue Address shortly.

27. At approximately 12:49 p.m., agents observed a silver-colored 2013 Hyundai Sonata arrive and park near the 87th Avenue Address. A short moment later CI-2 exited his/her vehicle and approached ESCORZA, who exited the Hyundai Sonata.

28. A few minutes later, CI-2 and ESCORZA entered the 87th Avenue Address together. Once inside, ESCORZA weighed a white crystalline substance using a scale and then placed the substance in a clear plastic bag.

---

[6] The complete address is obscured to protect personally identifiable information.

7

29. While within the 87th Avenue Address, CI-2 handed ESCORZA the $600.00 in U.S. currency and ESCORZA handed CI-2 a clear Ziplock-type bag containing the white crystalline substance. A few minutes later, CI-2 exited the 87th Avenue Address, entered his/her vehicle, and left the area. The transaction was captured by the audio and video recording equipment worn by CI-2.

30. After the meeting, CI-2 was debriefed by Det. Pena-Vega and me, during which time he handed me a medium-sized clear plastic bag containing a white crystal-like substance resembling methamphetamine and weighing approximately 232.6 grams. I then recovered the video/audio recording of the meeting captured by CI-2. The suspected drugs were subsequently transported to the CBP San Francisco laboratory for testing.

31. The methamphetamine was tested at a government laboratory and tested positive for the Schedule II substance methamphetamine hydrocholoride with a purity of roughly 99.8 percent and a weight of approximately 223 grams.

//
//
//
//
//
//
//
//
//
//
//
//

## **CONCLUSION**

32.     Based on my training and experience, and the facts and circumstances set forth above, I believe probable cause exists to believe that on Carlos Steven ESCORZA with distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), occurring on or about February 7, 2024, in Oakland, California, in the Northern District of California. Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for ESCORZA's arrest.

   /s/_____
Carlo Romero
Special Agent
Homeland Security Investigations

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 3rd day of May 2024.  This complaint and arrest warrants are to be filed under seal.

_____
HON. SALLIE KIM
United States Magistrate Judge

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: [X] COMPLAINT    [ ] INFORMATION    [ ] INDICTMENT    [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

## OFFENSE CHARGED

21 U.S.C. 841(a)(1), (b)(1)(C) - distribution of methamphetamine

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

PENALTY: Maximum of 20 years' imprisonment
Maximum $1,000,000 fine
Minimum 3-years' supervised release

**DEFENDANT - U.S**
➤ Carlos Steven Escorza

DISTRICT COURT NUMBER

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)
Carlo Romero, Special Agent, HSI

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   [ ] U.S. ATTORNEY    [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form: Ismail J. Ramsey

[X] U.S. Attorney    [ ] Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Kevin Yeh, Daniel Pastor

## DEFENDANT

**IS NOT IN CUSTODY**
1) [ ] Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ➤
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge
5) [X] On another conviction    [ ] Federal [X] State
6) [ ] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed? [ ] Yes [X] No    If "Yes" give date filed

**DATE OF ARREST** ➤ Month/Day/Year April 10, 2024

Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ➤ Month/Day/Year

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
[ ] SUMMONS    [ ] NO PROCESS*    [X] WARRANT    Bail Amount: No bail

If Summons, complete following:
[ ] Arraignment    [ ] Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:     Before Judge:

Comments: